UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO.: 07-50217-LMK
CHAPTER 7 CASE

IN RE:
LEAH DIAN PICKETT
Debtor.
_________________________________/

**MOTION FOR RELIEF FROM STAY**

MOVANT, **U.S. BANK, N.A., ITS SUCCESSORS AND/OR ASSIGNS**, by and through its undersigned attorney shows the Court:

1. Movant is a secured creditor of the above styled Debtor(s) and brings this Motion pursuant to the provisions of Section 362(d) of the Bankruptcy Code.

2. The Debtor(s) own(s) certain real property in Bay County, FL described as:

   **SEE ATTACHED SCHEDULE A - LEGAL DESCRIPTION**
   **A/K/A: 8038 WILLOW ROAD, YOUNGSTOWN, FL 32466**

3. Debtor(s) own(s) the above real property subject to a promissory note and mortgage securing same dated August 27, 1999 which note and mortgage are held by Movant. Copies of the note and mortgage to Movant are attached hereto. See Exhibit A attached.

4. Debtor(s) is in default upon the subject mortgage for the payment due on April 1, 2007 and is owed an approximate principal balance of $86,271.280. See Exhibit B. attached

5. According to the Bay County Property appraiser, the market value of the property is $171,924.00. See Exhibit C attached.

6. Debtor(s) have evidenced their intention to surrender subject property in their statement of intention therefore, this case is not necessary to an effective reorganization

7. Movant, **U.S. BANK, N.A., ITS SUCCESSORS AND/OR ASSIGNS,** is entitled to adequate protection of its interest in the subject real property and would request the Court to require Debtor (s) to make payments to Movant in order to provide such adequate protection. If no such adequate

protection can be provided, Movant respectfully request the Court to allow relief from stay in order to permit the commencement or completion of a foreclosure action now in State Court.

8. **U.S. BANK, N.A., ITS SUCCESSORS AND/OR ASSIGNS,** requests, that ten (10) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3) is waived so that **U.S. BANK, N.A., ITS SUCCESSORS AND/OR ASSIGNS**, can pursue its in rem remedies without further delay.

9. **U.S. BANK, N.A., ITS SUCCESSORS AND/OR ASSIGNS**, seeks the award of bankruptcy fees and cost of $800.00 for the prosecution of this Motion or that a State Court Judge is permitted to award bankruptcy fees and cost for the prosecution of this Motion.

10. Movant requests permission to offer the Debtor(s) information regarding a potential Forbearance Agreement, Loan Modification, Refinance Agreement, or other loan workout/ loss mitigation Agreement, and may enter into such agreement with Debtor(s) without violating any Discharge Order. However, Movant may not enforce any personal liability against Debtor(s) if Debtor(s) personal liability is discharged in this bankruptcy case.

11. Movant requests that should the Debtor(s) convert this case to anther chapter that relief awarded will survive any conversion made by the Debtor(s) and will not be allowed to include the creditor in the Chapter 13 plan.

**WHEREFORE**, Movant, **U.S. BANK, N.A., ITS SUCCESSORS AND/OR ASSIGNS,** moves this Court to enter its order granting relief from stay or requiring Debtor(s) to provide adequate protection to Movant and that the ten (10) day stay of the of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) is waived so that, **U.S. BANK, N.A., ITS SUCCESSORS AND/OR ASSIGNS,** can pursue its in rem remedies without further delay and award bankruptcy fees and cost of $800.00, or that a state court Judge is permitted to award bankruptcy fees and costs for the prosecution of this motion, that Movant may offer and provide Debtor(s) with information re: a potential Forbearance agreement, Loan Modification, Refinance Agreement and may enter into such agreement with Debtor(s) without violating any Discharge Order. However, Movant may not enforce

any personal liability against Debtor(s) if Debtor(s) personal liability is discharged in this bankruptcy case and granting such other relief as to the Court may deem just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United State District Court for the Northern District of Florida and I am in compliance the additional qualifications to practice in this court set forth in Local Rule 106 and I FURTHER CERTIFY that a true and correct copy of the Motion For Relief From Stay and Affidavit in Support of Motion for Relief was delivered to the addressees on the attached mailing list by First Class U. S. Mail postage pre-paid and/or electronic mail this 2 day August of 2007.

Law Offices of Marshall C. Watson, P.A.
1800 N.W. 49TH Street, Suite 120
Fort Lauderdale, FL 33309
Telephone: (954) 453-0365/1-800-441-2438
Facsimile: (954) 689-3517

By: ____________
Scott Weiss, Esq.
Bar Number: 710910

Mailing List for Bankruptcy Case No: 07-50217-LMK
JOHN E. VENN, JR. TRUSTEE
220 WEST GARDEN ST. STE. 603
PENSACOLA, FL 32501

LEAH DIAN PICKETT
8038 WILLOW ROAD
YOUNGSTOWN, FL 32466

MACK J. PICKETT, JR.
8038 WILLOW ROAD
YOUNGSTOWN, FL 32466

MARTIN S. LEWIS, ESQ.
LEWIS & JORNOVOY, P.A.
1100 NORTH PALAFOX ST.
PENSACOLA, FL 32501

U.S. TRUSTEE
UNITED STATES TRUSTEE
110 E. PARK AVENUE
STE 128
TALLAHASSEE, FL 32301

This instrument was prepared by:
Carla Reid
An Officer of
Lawyers Title Agency of
North Florida, Inc.
3001 Highway 77
Lynn Haven, FL 32444
For Purposes of Title Insurance
File# M49368

FILE# 99-046860
BAY COUNTY, FLORIDA

** OFFICIAL RECORDS **
BOOK: 1895 PAGE: 170

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on August 27, 1999. The mortgagor is MACK J PICKETT JR and LEAH D PICKETT HUSBAND AND WIFE ("Borrower"). This Security Instrument is given to PEOPLES FIRST COMMUNITY BANK, which is organized and existing under the laws of the State of Florida, and whose address is P.O. BOX 59955 PANAMA CITY, FL. 32402 ("Lender"). Borrower owes Lender the principal sum of NINETY EIGHT THOUSAND FIVE HUNDRED AND 00/100 Dollars (U.S. $ 98,500.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2029. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in BAY County, Florida:

SEE SCHEDULE "A" ATTACHED HERETO AND MADE A PART HEREOF.

THIS MORTGAGE IS EXEMPT FROM FLORIDA DOCUMENTARY STAMP TAX UNDER 201.08, F.S. AND FLORIDA NONRECURRING INTANGIBLE TAX UNDER 199, F.S. PER 159.621 FLORIDA STATUTES.

which has the address of 8038 WILLOW ROAD [Street] YOUNGSTOWN [City] Florida 32466 [Zip Code] ("Property Address");

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac Uniform Instrument Form 3010 9/90

ITEM 1615L1 (9511) (Page 1 of 6 pages) GREATLAND To Order Call: 1-800-530-9393 FAX 616-791-1131

JUL. 24. 2007 1:25PM NO. 8186 P. 5

** OFFICIAL RECORDS **
BOOK: 1895 PAGE: 172

for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation**. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

** OFFICIAL RECORDS **
BOOK: 1895 PAGE: 175

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

(Seal) -Borrower
MACK J PICKETT JR

(Seal) -Borrower
LEAH D PICKETT

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

Signed, sealed and delivered in the presence of:

STATE OF FLORIDA
COUNTY OF BAY

The foregoing instrument was acknowledged before me this 27th day of August, 1999 by MACK J PICKETT JR and LEAH D PICKETT, HIS WIFE

who is personally known to me or who has produced driver's licenses as identification.

Notary Public

My Commission expires:

(Seal)

CARLA MORRIS REID
Notary Public - State of Florida
My Commission Expires Oct. 2,1999
Commission No. CC498697

JUL. 24. 2007 1:27PM NO. 8186 P. 10

** OFFICIAL RECORDS **
BOOK: 1895 PAGE: 176

**Schedule A**

Commence at the Southeast Corner of the West Half of Section 22, Township 2 South, Range 13 West; thence N01°42'43"W along the East side of said West Half of Section 22, 1120.40 feet; thence S89°49'W, 1204.01 feet to the Point of Beginning on the North side of a 60 foot street; thence continuing S89°49'W along the North side of said street, 220 feet to the East side of a 60 foot street; thence N00°11'W along the East side of said Street, 223 feet; thence N89°49'E, 220 feet; thence S00°11'E, 223 feet to the Point of Beginning.

File No: M4936B

793299

# NOTE

August 27, 1999 — PANAMA CITY BEACH — FLORIDA
[Date] [City] [State]

8038 WILLOW ROAD, YOUNGSTOWN, FL 32466

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 98,500.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is PEOPLES FIRST COMMUNITY BANK

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 5.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1ST day of each month beginning on October 1, 1999. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on September 1 2029, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at P.O. BOX 59955, PANAMA CITY, FL. 32402

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 574.82

**4. BORROWER'S RIGHT TO PREPAY** [DELETION, SEE ALLONGE MP. /SDP initials

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

THIS PROMISSORY NOTE IS GIVEN TO THE FLORIDA HOUSING FINANCE CORPORATION AND IS EXEMPT FROM TAXATION PURSUANT TO SECTIONS 199.183, 420.513(1), FLORIDA STATUTES.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument Form 3200 12/83

GREATLAND
To Order Call: 1-800-530-9393 Fax 616-791-1131

ITEM 1646L1 (9511) (Page 1 of 3 pages)

JUL. 24. 2007 1:25PM NO. 8186 P. 1

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Mack J. Pickett Sr. (Seal) -Borrower
MACK J PICKETT JR

_______________ (Seal) -Borrower

Leah D. Pickett (Seal) -Borrower
LEAH D PICKETT

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
THE LEADER MORTGAGE COMPANY
WITHOUT RECOURSE
PEOPLES FIRST COMMUNITY BANK
EDNA FAY COX, VICE PRESIDENT

Cleveland, Ohio _______ 19 _______
Pay to the order BANK OF NEW YORK TRUST COMPANY OF FLORIDA, N.A. AS TRUSTEE FOR THE FLORIDA HOUSING FINANCE AGENCY
without recourse
THE LEADER MORTGAGE COMPANY
By Elaine M. Wojtowicz, Sr. Vice President

Form 3200 12/83

GREATLAND
To Order Call: 1-800-530-9393 Fax 616-791-1131

ITEM 1646L3 (9511)

NO. 8186 P. 3

JUL. 24. 2007 1:25PM

UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO.: 07-50217-LMK
CHAPTER 7 CASE

IN RE:
LEAH DIAN PICKETT
Debtor.
_______________________________________/

STATE OF ARIZONA
COUNTY OF MARICOPA

**AFFIDAVIT IN SUPPORT OF MOTION
FOR RELIEF FROM STAY**

BEFORE ME, the undersigned authority, on this day personally appeared Olivia Todd on behalf of **U.S. BANK, NA, ITS SUCCESSORS AND/OR ASSIGNS** who is over the age of eighteen years, is fully qualified and authorized to give this Affidavit and has personal knowledge of the matters addressed herein. After being by me duly sworn on her/his oath deposed and stated:

1. My name Olivia Todd. I am President for NDSC, authorized servicing agent for, **U.S. BANK, NA, ITS SUCCESSORS AND/OR ASSIGNS,** with regards to this loan with **U.S. BANK, NA, ITS SUCCESSORS AND/OR ASSIGNS.** In the course of my employment, I have become familiar with the manner and method in which **U.S. BANK, NA, ITS SUCCESSORS AND/OR ASSIGNS,** maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.
2. I have reviewed the books and records which reveal that **U.S. BANK, NA, ITS SUCCESSORS AND/OR ASSIGNS,** is the owner and holder of a real estate Note

("Note") which is secured by a Mortgage of even date executed by **LEAH DIAN PICKETT** on or about 8/27/99.

3. As of July 24, 2007, debtors were in default on (4) monthly mortgage payments of $718.43 each, plus (4) late charges of $28.74 each for a total of $2,988.68. As of the date Movant's Motion was filed, the approximate payoff amount owed by Debtors to **U.S. BANK, NA, ITS SUCCESSORS AND/OR ASSIGNS,** was $86,271.28. This sum includes the principal balance only.

4. **U.S. BANK, NA, ITS SUCCESSORS AND/OR ASSIGNS,** had to retain Counsel to represent it before this Court and is incurring legal expenses and attorneys' fees of at least $900.00 for handling the Motion for Relief from Stay for which it is entitled to reimbursement under the terms of the Note.

5. The foregoing facts are of my own personal knowledge and belief, and if called upon to appear as a witness, I could, and would, testify completely thereto. I declare under penalty of perjury that to the best of my knowledge, the foregoing facts are true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

Affiant

Sworn to and subscribed before me this

26th day of July,2007.

NOTARY PUBLIC, State of Arizona

Commissioned Name of Notary Public

Personally known _____ or produced identification

Type of Identification Produced
07-12938
9900793299

Elissa R. Garcia
Notary Public-Arizona
MARICOPA COUNTY
My Commission Expires
AUGUST 28, 2008



Home of the World's Most Beautiful Beaches

Zane Spitzer
Bay County Property Appraiser

650 Mulberry Ave., Panama City, FL 32401 | (850) 784-4095 | Fax: (850) 784-6128

| Appraiser Home | Return to Main Search Page | Previous Parcel | Next Parcel |
|---|---|---|---|
| Show Parcel Map | Sales in Area | Show Complete Summary | Card View Print |

| Owner Name | Property Address | Parcel Number |
|---|---|---|
| PICKETT, LEAH D | 8038 WILLOW RD | 05452-030-000 |

| Owner Address | Business |
|---|---|
| 8038 WILLOW RD<br>YOUNGSTOWN, FL 324662335 | Not all businesses may be listed on this parcel |

| Homestead | Primary Millage District | Aggregate Millage Rate | Section-Township-Range | Property Type |
|---|---|---|---|---|
| YES | Bay Co Fire-BGF (32) | 11.9552 | 22-2S-13W | SINGLE FAMILY |

**Current Preliminary Property Assessment Values**

| | | |
|---|---|---|
| Building Value | | 92,883 |
| Extra Feature Value | Show Details | 7,101 |
| Land Value | | 71,940 |
| Agricultural Value | | 0 |
| * Just (Market) Value | | 171,924 |
| Assessed Value | | 97,064 |
| Exemption Value | | *25,000 |
| Taxable Value | Tax Collector Data | 72,064 |

**Legal Description**

22 2S 13W -1.5- 141D BEG 1120.4' N & 1204.01' W OF SE COR OF W1/2 OF SEC TH W 220

Show Complete Legal Description

The legal description shown here may be condensed for assessment purposes. Exact description may be obtained from the recorded deed.

*The Senior Exemption Does Not Apply to All Taxing Authorities. It DOES NOT apply to agencies such as fire districts, water management and the school district.

* Just (Market) Value is established by the Property Appraiser for ad valorem tax purposes. It does not represent anticipated selling price

**BUILDING INFORMATION**

| Type | Total Area | Heated Area | Exterior Wall | Roof Cover | Interior Wall | Flooring |
|---|---|---|---|---|---|---|
| SINGLE FAMILY RESIDENCE, EXCEPTIONAL | 1,860 | 1,240 | COMMON BRICK | ASPHALT COMPOSITION SHINGLE | DRYWALL | SHEET VINYL |
| **Heating Type** | **A/C Type** | **Baths** | **Bedrooms** | **Stories** | **Actual Year Built** | **Effective Year Built** |
| FORCED AIR, DUCTED | CENTRAL | 2 | 3 | 1 | 1976 | 1976 |

Show Bldg 1

**LAND INFORMATION**

| Description | Frontage | Depth | Land Units | Unit Type |
|---|---|---|---|---|
| SFR | 220 | 223 | 220.000 | FRONT FEET |

**SALES INFORMATION**

| OR Book/Page | Sale Date | Sale Price | Instrument | Qualification | Vacant/Improved | Grantor | Grantee |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2650/1053 | 07-30-2005 | 100 | WARRANTY DEED | UNQUALIFIED | IMPROVED | MACK J PICKETT, JR & LEAH D | LEAH D PICKETT |
| 1895/168 | 08-27-1999 | 96,300 | WARRANTY DEED | QUALIFIED | IMPROVED | KYRLE M NELSON | MACK J PICKETT JR & LEAH D |

Show All Sales | Comparative Market Analysis | Generate Owner List By Radius

The Bay County Property Appraiser's Office makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation. Assessed values are from the last certified taxroll, unless otherwise stated. All data is subject to change before the next certified taxroll.

© 2002 by the County of Bay, FL | Website design by qpublic.net